```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
                                        :
LINDA THURBER,                          :
     Plaintiff,                         :
                                        :
     v.                                 :    No. 2:05-cv-159
                                        :
UNITED PARCEL SERVICE, INC.,            :
     Defendant.                         :
                                        :
```

## OPINION AND ORDER

Linda Thurber brought suit against United Parcel Service ("UPS") on April 28, 2005, in the Vermont Superior Court in Wyndham County, Vermont. The action was removed to this Court on June 7, 2005, and original jurisdiction was established pursuant to 28 U.S.C. § 1331. Plaintiff's amended complaint asserts six claims: breach of contract (Count I); wrongful termination (Count II); "bad faith" (Count III); breach of fiduciary duty (Count IV); violation of 21 V.S.A. § 643b (Count V); and violation of 21 V.S.A. § 495 (Count VI). UPS has moved for summary judgment on all counts. For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 79) is GRANTED.

### I.  FACTS

Thurber began working at UPS on July 25, 1988, as a "preloader/splitter", a position in which she remained throughout the entirety of her employment with UPS. Thurber worked three and one-half hour morning shifts, Mondays through Fridays,

earning approximately $18,000 annually.  During her tenure, Thurber was a member of a bargaining unit represented by Chauffeurs, Teamsters, & Helpers, Local No. 597 (the "Union"). The terms and conditions of her employment were governed by the Collective Bargaining Agreement ("CBA") between the Union and UPS, and Thurber was aware that a union representative was available to whom she could refer any employment issues.

The Brattleboro facility, where Thurber worked, is dedicated to shipping and receiving packages.  Packages are brought to the facility early in the morning and are sorted and packed on to UPS trucks.  Drivers then distribute packages to various local destinations.  Later in the evening, trucks return to the center, and more packages are unloaded and sorted.  During the day, the facility is nearly empty and almost no activity is conducted except for pick-up by customers at the customer service window.

UPS establishes essential requirements for all positions. With one exception, union positions at the Brattleboro facility specifically  require that employees are able to lift and/or handle packages weighing up to seventy pounds.  The only position that does not explicitly include such a lifting requirement, that of shift driver, nonetheless requires that employees be able to "handle weight in excess of 70 pounds for short durations on an infrequent basis."  (Tanguay Aff. at 5-h.)

Thurber's job as a preloader/splitter required her to stand

at the head of a conveyor belt and to orient boxes entering the facility on the belt in such a way that the label could be read by other preloaders.  Thurber would then carry boxes from the belt and load them into various delivery trucks based on the packages' destination address.

On February 11, 2003, as she was leaving work at the end of her shift, Thurber was struck in the back of the legs by a co-worker's automobile in the UPS parking lot.  She was taken to Brattleboro Memorial Hospital and was discharged later that day.  The treating physician instructed Thurber to wear a neck brace, take Tylenol, and rest.  The physician also instructed Thurber not to return to work for three to four weeks.

Thurber subsequently filed a worker's compensation claim.  Based on this claim, she received approximately $74,000 in benefits, including direct disability payments as well as provision of vocational rehabilitation benefits and medical expenses.  The claims were processed and paid out by Liberty Mutual, UPS's Workers' Compensation carrier.  UPS is not self-insured and has not been during any of the years relevant for this case, and Liberty Mutual has been UPS's Workers' Compensation insurer since at least 2000.

Thurber returned to work in a light-duty capacity on March 17, 2003.  She worked for two weeks, three mornings per week.  At the end of this period, she was instructed by her doctor not to

lift more than 10 pounds above shoulder-level.  On April 18, 2003, Thurber's orthopedic surgeon relaxed her lifting restrictions to 50 pounds.  Thurber, however, continued to experience difficulty lifting and consulted a second surgeon.  On May 13, 2003, the second surgeon, Dr. Chard, diagnosed tendonitis in Thurber's left shoulder and restricted her to lifting no more than ten pounds.

Thurber returned to UPS working five mornings a week in a light-duty capacity through July 1, 2003.  At this time, Dr. Chard instructed her to "severely curtail her work activities."  After July 1, 2003, Thurber never returned to work at UPS.  On November 21, 2003, she had a Functional Capacity Examination at which Dr. Chard determined that she had reached a maximal medical endpoint.  He reported that Thurber had a lifting restriction of 25 pounds and that she continued to suffer from left shoulder tendonitis.

Thurber began seeing a third orthopedic surgeon, Dr. McLarney, in 2005.  While in Dr. McLarney's care, Thurber underwent arthroscopic surgery on her left shoulder on January 4, 2006.  Dr. McLarney determined that Thurber had an anterior labral tear in her left shoulder.  At that time, Dr. McLarney instructed Thurber to refrain from lifting more than five pounds and not to engage in any weighted overhead lifting.  Over the next six months, these restrictions were somewhat eased.  On July

4

11, 2006, Dr. McLarney concluded that Thurber had reached her maximal medical endpoint. At this point, Dr. McLarney removed lifting restrictions, instructing Thurber that she could lift as much at waist level as she could tolerate. However, Dr. McLarney recommended that she permanently refrain from "significant weighted overhead lifting."

Thurber has advised UPS that she is interested in a Union position. However, she has never identified any particular positions with UPS for which she would like to be considered nor any positions for which she is qualified. UPS has consistently maintained that there have not been any bargaining-unit positions available at its facilities that Thurber could perform based on her restrictions.

## II.  SUMMARY JUDGMENT STANDARD

The Court will grant a motion for summary judgment if no genuine issue of material fact exists and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). In deciding whether a genuine issue of material fact exists, the Court interprets all ambiguities and draws all inferences in favor of the non-moving party. *Id.* (citing *Ford v. McGinnis*, 352 F.3d 582, 587 (2d Cir. 2003)). *See also* Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 247-48 (1986).  Once the movant has established that there is no material issue of fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).  Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson*, 477 U.S. at 248.

### III.  DISCUSSION

**A.  Counts I and IV**

Thurber has brought six claims against UPS; Counts I and IV allege breach of contract and breach of fiduciary duties respectively.  UPS has moved for summary judgment on these counts arguing, first, that both claims are preempted under § 301(a) of the Labor Management and Relations Act (LMRA), second, that both claims lack merit, and third, that both claims are barred by the

statute of limitations.  The Court has already had occasion to consider the parties' arguments on preemption with respect to Count I in its opinion and order denying Thurber's motion to remand.  (Doc. 26.)  In that opinion, the Court found that Thurber's breach of contract claim was preempted under the LMRA and that removal was appropriate under federal question jurisdiction.  The Court now finds that Count IV is also preempted under the LMRA and grants summary judgment in favor of UPS on both counts.

   The preemptive force of § 301 has been firmly established for more than two decades.  *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393-94 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218-19 (1985); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) .  Preemption is mandated whenever "the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement."  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988).  Admittedly, "courts should proceed cautiously when preemption involves 'nonnegotiable rights conferred on individual employees as a matter of state law.'" *Buote v. Verizon*, 190 F. Supp. 2d 693, 701 (D. Vt. 2002) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 n.8 (1994)).  The claims considered here, however, implicate no such rights.

   The Court has already ruled that Thurber's breach of

contract claim is preempted because the only document establishing contractual rights between the parties is the CBA and consequently resolution of the claim requires interpretation of the CBA. (Doc. 26.) UPS argues that Thurber's breach of fiduciary duty claim should likewise be preempted; in arguing the point, both parties rely on this Court's opinion in *Buote*. While the Court found that certain bad faith claims asserted by Buote did not require interpretation of the Union labor contract, the Court specifically held that Buote's breach of contract *and fiduciary duty claims* are necessarily preempted by the LMRA." *Buote*, 190 F. Supp. 2d at 703 (emphasis added). Thurber has failed to demonstrate the existence of any contract between the parties except the CBA; any fiduciary duties UPS owed to Thurber are accordingly defined therein. Proof of the elements of this claim would require the Court to interpret the CBA, and the claim is thus preempted under the LMRA.

Additionally, UPS is entitled to summary judgment on both counts based on Thurber's failure to assert a viable claim. Ordinarily, before bringing a claim under the LMRA, a plaintiff must show exhaustion of the grievance procedures detailed in the labor contract. However, a plaintiff may circumvent the exhaustion requirement in cases where a hybrid claim is asserted against both the employer for breach of contract and the employee's union for breach of the duty of fair representation.

8

*Vaca v. Sipes*, 386 U.S. 171 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976).  Although a plaintiff may proceed on a hybrid claim against an employer alone (as Thurber has in this case, having dismissed all charges against Local 597 in January, 2006), the plaintiff "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."  *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983).

Thurber has failed to provide sufficient support for a hybrid claim.  In particular, the record shows that from the time of the accident through the present, Thurber has been physically unable to meet the performance requirements of her former position and that UPS had no union positions at its facilities that Thurber could have performed given her medical restrictions.  Thurber has failed to identify any provision within the CBA that requires UPS to create a position for her.  Moreover, despite the evidence provided by UPS demonstrating the absence of any appropriate positions for her, Thurber has offered no specific facts to contradict this evidence.  Summary judgment is appropriate.  *See First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

UPS has also sought dismissal on the grounds that both claims are barred by the statute of limitations.  Courts generally require that hybrid claims under § 301 be brought

9

within six months from "when the employee knew or should have known of the breach of the duty of fair representation." *Carrion v. Enterprise Ass'n, et al.*, 227 F.3d 29, 34 (2d Cir. 2000) (quoting *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997)). Because an issue of material fact exists, the Court does not grant summary judgment on this ground.[1]

**B.   Count III**

Count III of Thurber's amended complaint asserts a claim of bad faith against UPS in its handling of Thurber's worker compensation claim. A majority of jurisdictions, including Vermont, recognize so-called first-party bad-faith tort claims, in which an insured brings suit against its insurer for failure to make payment on a claim. *See Bushey v. Allstate Ins. Co.*, 670 A.2d 807, 809 (Vt. 1995); *Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 791 n.1 (Iowa 1988) (compiling cases). An inescapable precondition for succeeding on such a claim is that the defendant stand in an insurer-insured relationship with the plaintiff, or,

---

[1] Although UPS has persuasively argued that the alleged acts of breach on its part took place well outside the six-month window, the record is both more ambiguous and less developed with regard to the Union's alleged breach. Notably, the only document in the record specifically relating to the grievance procedure is a grievance report filed by Ms. Thurber with the Local 587. (Doc. 81.3 (Thurber Dep. Ex. 1).) Yet this document contains widely disparate dates, not clearly indicating whether it was filed in January or October of 2004. Drawing all inferences in favor of the non-movant, there is a genuine issue of fact as to whether Thurber knew or should have known of the Union's breach as of October 28, 2005, six months prior to filing suit.

in the Workers' Compensation context, that the employer be a self-insurer. In this case, UPS has submitted an affidavit from the Vermont Department of Labor showing that it does not self-insure and has not self-insured for purposes of the Workers' Compensation Statute during any of the years relevant to this litigation. Thurber's own testimony and other documentation in the record indicate that Liberty Mutual is UPS's Workers' Compensation carrier; however, Liberty Mutual is not and has never been a party to these proceedings. Furthermore, there are no allegations of conduct evidencing bad faith other than a brief administrative delay in June, 2003, that Liberty Mutual long ago corrected. *See Bushey*, 670 A.2d at 809 (holding that insurers are not liable for good-faith errors in delaying claims). As such, Thurber's bad faith claim cannot be sustained.[2]

**C.   Counts II, V, and VI**

In Counts II, V, and VI, Thurber asserts three statutory claims: failure to reinstate in violation of § 643b of the Vermont Workers' Compensation Act ("VWCA"); unlawful discrimination (i.e. retaliation for filing a Workers' Compensation claim) in violation of § 710 of the VWCA; and

---

[2]  UPS has also argued that Thurber's bad faith claim is preempted under the LMRA and has urged the Court to revisit its decision in *Buote* with regard to preemption of bad-faith torts. Given that the bad-faith claim cannot be properly asserted against UPS in this case, the Court will not undertake a reexamination of *Buote* here.

violation of § 495 of the Fair Employment Practices Act ("FEPA"). Thurber has failed to meet her burden in establishing a prima facie case on all three counts; in each case, the failure may be traced back to two pivotal facts.  First, Thurber's medical records indicate that since her accident she has been physically incapable of meeting the weight-lifting requirements (seventy-five pounds) mandated for all bargaining-unit positions at the UPS facility.  In fact, during this period her surgeons have imposed a nearly continuous lifting restriction of twenty-five pounds or less.  Second, based on her weight-lifting restrictions, UPS does not have and has not had any suitable alternative positions in which it could employ Thurber.

Section 643b mandates reinstatement of an injured worker "in the first available position suitable for the worker given the position the worker held at the time of the injury."  Vt. Stat. Ann. tit. 21, § 643b(b) (2003).  As a condition precedent, the statute requires that the worker recover within two years of the onset of the disability; recovery is defined to mean that "the worker can reasonably be expected to perform safely the duties of his or her prior position or an alternative suitable position." *Id*. § 643b(a)(2).  In light of the facts indicated above, Thurber can show neither that she has recovered for purposes of the statute nor that there has ever been a suitable position.  At most, Thurber has alleged that UPS may have temporarily

12

accommodated other employees who could only lift up to fifty pounds. Even if these allegations could be proven, they would fail to provide a foundation for either of the elements of a § 643b claim.[3]

Section 710 prohibits employers from discharging or discriminating against an employee "because such employee asserted a claim for benefits under this chapter [Chapter 9, governing Workers' Compensation]." Vt. Stat. Ann. tit. 21, § 710 (2003). To withstand summary judgment, the plaintiff must present a prima facie case of retaliatory discrimination, consisting of four elements: "(1) he [or she] was engaged in a protected activity, (2) his [or her] employer was aware of that activity, (3) he [or she] suffered adverse employment decisions, and (4) there was a causal connection between the protected activity and the adverse employment decision." *Lowell v. IBM*, 955 F. Supp. 300 (D. Vt. 1997) (quoting *Murray v. St. Michael's College*, 667 A.2d 294 (Vt. 1995)). Furthermore, if the defendant articulates a legitimate, nondiscriminatory reason for the decision, then the plaintiff will be required to show that this reason was a mere pretext for discrimination. *Id*.

The facts do not necessarily demonstrate an adverse

---

[3] The Vermont Supreme Court has been presented with the opportunity to construe § 643b to include a "reasonable accommodation" provision and has refused to do so. *See Wentworth v. Fletcher Allen Health Care*, 765 A.2d 456 (Vt. 2000).

employment decision—UPS has not discharged, suspended or otherwise closed its doors to Thurber—let alone a discriminatory motive. Assuming *arguendo* that Thurber had presented evidence of an adverse employment decision taken *on account of* her Workers' Compensation claim, UPS has nonetheless provided a "legitimate, nondiscriminatory reason" for failing to reinstate her, namely that there are no jobs available whose essential functions Thurber can perform. Since Thurber has introduced no evidence suggesting that this reasoning is pretextual, summary judgment must be granted.

Section 495 prohibits discrimination against "a qualified handicapped individual" unless "a bona fide occupational qualification requires persons of a particular . . . physical or mental condition." Vt. Stat. Ann. tit. 21, § 495(a)(1) (2003). Even assuming that Thurber could establish that she is a "handicapped individual" under § 495d(5) for purposes of the Act, she has failed to establish that she was qualified. "Qualified handicapped individual" is defined by FEPA as "an individual with a handicap who is capable of performing the essential functions of the job or jobs for which he is being considered with reasonable accommodation to his handicap." *Id*. § 495d(6). Thurber bears the burden of proving that she is a qualified handicapped individual; at a bare minimum, she must "present evidence as to [her] individual capabilities to perform the job

14

in question and suggestions for some reasonable assistance or job modification by the employer." *State v. G.S. Blodgett Co.*, 656 A.2d 984, 989(Vt. 1995) (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)).

Although this "is not a heavy burden," Thurber has not met it. *Id.* First, Thurber has not shown that she was capable of performing the "essential functions" of her former job. To the contrary, the uncontested facts show that she was not reinstated precisely because of her inability to perform the substantial amount of lifting involved. Second, Thurber has failed even "to produce evidence that a *reasonable* accommodation is possible." *Id.* The burden shifts to the employer to show that no reasonable accommodation is possible only *after* the plaintiff has made out their prima facie case. *Gilbert*, 949 F.2d at 642. Nonetheless, UPS has established that all bargaining unit positions at the facility including Thurber's former position require substantial lifting. Given the drastic differential between these lifting requirements and Thurber's documented physical capabilities, the Court finds that no reasonable accommodation could facilitate Thurber in meeting the essential requirements of any bargaining unit position.[4] Accordingly, Thurber's FEPA claim must be

---

[4] The requirement of reasonable accommodation does *not* oblige the employer to create a new position to accommodate the employee. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999).

dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 79) is GRANTED.  Plaintiff's Motions to Compel (Docs. 82 and 99) are DENIED as untimely.  Defendant's Motions to Strike (Docs. 98 and 102) are DENIED as moot.


Dated at Burlington, Vermont this 15th day of October, 2007.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge